UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE STITCH FIX, INC. SECURITIES LITIGATION

Case No. 18-cv-06208-JD

**ORDER RE CONSOLIDATION, LEAD PLAINTIFF AND LEAD COUNSEL**

## I. CONSOLIDATION

This matter is comprised of four related shareholder class actions, each alleging securities fraud by Stitch Fix, Inc. and its officers based on substantially similar factual allegations: *Sawicki v. Stitch Fix, Inc.*, Case No. 18-cv-06208-JD; *Weismann v. Stitch Fix, Inc.*, Case No. 18-cv-06565-JD; *San Giorgi v. Stitch Fix, Inc.*, Case No. 18-06965-JD; and *Bishop, Sr. v. Stitch Fix, Inc.*, Case No. 18-cv-07427-JD. The cases involve common questions of law and fact. Fed. R. Civ. P. 42(a). Consequently, as has been requested without opposition, the cases are ordered consolidated for all purposes including trial under Rule 42(a).

The cases are consolidated into the lowest-numbered case, No. 18-cv-06208-JD, which is re-captioned *In re Stitch Fix, Inc. Securities Litigation*. The three other case numbers will be closed. The derivative action, *Royer v. Lake*, Case No. 18-cv-07475-JD, is not consolidated and will remain a related action.

## II. APPOINTMENT OF LEAD PLAINTIFF

The appointment of a lead plaintiff for the consolidated action under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), is a three-step process. *See In re Cavanaugh*, 306 F.3d 726, 729-31 (9th Cir. 2002). The first step is for the plaintiff in the first-filed action to "publiciz[e] the pendency of the action, the claims made and the purported class

period" in "a widely circulated national business-oriented publication or wire service." *Id*. at 729 (citing 15 U.S.C. § 78u-4(a)(3)(A)). The notice must "also state that 'any member of the purported class may move the court to serve as lead plaintiff.'" *Id*. There is no dispute that this step was adequately completed by plaintiff Sawicki. *See* Dkt. No. 11 (Notice of Publication).

In the next two steps, the Court considers "potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *Cavanaugh*, 306 F.3d at 732. In step two, the Court determines presumptive lead plaintiff status relying on the "presumptive lead plaintiff's complaint and sworn certification." *Id*. at 730. In step three, the other plaintiffs have "an opportunity to rebut the presumptive lead plaintiff's showing" by "present[ing] evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy." *Id*.

The PSLRA expressly contemplates that a "group of persons" may collectively serve as a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Our circuit has not yet spoken, however, on "whether a group can satisfy the 'largest financial interest' requirement by aggregating losses." *Cavanaugh*, 306 F.3d at 731 n.8. Assuming aggregation is allowed, the movants here have claimed losses in the following order, from largest to smallest: (1) the "Stitch Fix Investor Group," Dkt. No. 17; (2) Daphine Campbell and Paragon Fund Management LLC, Dkt. No. 33; (3) Ronald G. Bishop, Sr., Dkt. No. 21; and (4) Ganesh Kasilingam, Dkt. No. 26. The Court will consequently consider them in that order.

### A. Stitch Fix Investor Group

The self-styled "Stitch Fix Investor Group" is made up of investors Paul Phillips, Jeffrey Burke and Dennis Slater, and the group claims an aggregate loss of approximately $755,721.23. Dkt. No. 17-1 at 7. This is the largest amount of loss claimed, as is acknowledged by the other movants. *See*, *e.g.*, Dkt. No. 52 at 1 (Daphine Campbell and Paragon Fund Management LLC's acknowledgement that "it appears . . . [the] Stitch Fix Investor Group possess[es] the 'largest financial interest in the relief sought by the class'").

The main question for this group is whether it should be permitted to aggregate its losses and serve as lead plaintiff as a group. The Court concludes that it should not. Although there is

no controlling authority on point, the clear consensus in our district is that a group of investors who had no pre-existing relationship with one another, and whose relationship and group status were forged only by a lawyer, is not appropriate to be lead plaintiff based on their aggregated losses. *See*, *e.g.*, *In re Netflix, Inc., Securities Litigation*, No. 12-0225 SC, 2012 WL 1496171, at *4 (N.D. Cal. Apr. 27, 2012). That is the posture of the Stitch Fix Investor Group. *See* Dkt. No. 17-2, Ex. C (Joint Declaration) ¶¶ 3-6; Dkt. No. 71 (Hearing Transcript ("Tr.")) at 21:2-5 ("In terms of how they came together, they contacted -- each of them contacted my firm individually. We made them aware of each other . . . and gave them the information to contact each other."). Nothing in the two joint declarations submitted by the group demonstrates that it is the group members, and not the lawyers, who are driving their lead plaintiff application. Dkt. No. 17-2, Ex. C; Dkt. No. 53-3. The declaration allegations are conclusory and cursory, and indicate only that the group members -- who reside in Texas, Virginia and Pennsylvania -- have exchanged a few calls and emails with each other since being introduced by their common lawyer.

To permit aggregation and lead plaintiff status for such a group undercuts the goal of having the plaintiffs and not the lawyers call the shots in securities class actions. *Cavanaugh*, 306 F.3d at 736. Consequently, the Court declines to aggregate the Stitch Fix Investor Group members' losses or to consider their individual losses. The group members have not requested individual consideration and have expressly disavowed such an approach. *See* Tr. at 35:3-6 ("we are not in any way suggesting the Court should break apart our group. They came to the party together and they're sticking together."). The Stitch Fix Investor Group's motion for appointment as lead plaintiff is denied.

### B. Daphine Campbell and Paragon Fund Management LLC

The Campbell-Paragon Fund Management group claims that it is "second in line." Tr. at 5:1. That may be in terms of aggregated losses, but the observations about the Stitch Fix Investor Group apply equally to this group. It, too, appears to be an unrelated group of investors that was created by a common lawyer that has submitted at best, a highly conclusory joint declaration. *See* Dkt. No. 33 at 9; Dkt. No. 34, Ex. E. As with the Stitch Fix Investor Group, neither Campbell nor

1  the Paragon Fund has requested consideration on an individual basis. This group's motion is
2  denied.

### C. Ronald G. Bishop, Sr.

Ronald G. Bishop, Sr., is next, Dkt. No. 21, but his application falters at Step Three. As the other movants have pointed out and as he himself has acknowledged, Bishop sold only Stitch Fix put options during the class period and he did not buy or sell any Stitch Fix common stock. *See* Dkt. No. 21 at 9. He has recognized that this is a vulnerability in his application, *see* Tr. at 34:11-15 ("[w]ith respect to the options versus stock purchaser, we recognize that there is a split"), and the Court finds that this fact is sufficient to dispute his adequacy and typicality. *See Applestein v. Medivation Inc.*, No. C 10-00998 MHP, 2010 WL 3749406, at *4 (N.D. Cal. Sept. 20, 2010) ("the nature of [the movant] Slotkin's options trading and the information he used to make investment decisions could become the focus of the litigation, distracting from the central issue: did [defendants] commit a fraud on the market? Accordingly, because Slotkin traded only in options, the court holds that Slotkin should not be appointed lead [plaintiff]."). The motion of Ronald G. Bishop, Sr., is denied.

### D. Ganesh Kasilingam

That leaves the last movant, Ganesh Kasilingam. Dkt. No. 26. Kasilingam claims that he purchased 19,800 shares of Stitch Fix securities and suffered approximately $115,380 in losses as a result of defendants' alleged misconduct. *Id*. at 5. He asserts that he is essentially the last man standing and that he is "the only movant that meets all of the PSLRA's requirements." Tr. at 33:25; Dkt. No. 63 at 8. After evaluating the application under *Cavanaugh*, the Court appoints Kasilingam as lead plaintiff of the consolidated action.

### III. APPOINTMENT OF LEAD COUNSEL

Under the PSLRA, the Court must also appoint lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). "While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff." *Cavanaugh*, 306 F.3d at 734 (citations omitted). Kasilingam has selected the firm

of Robbins Geller Rudman & Dowd LLP.  The Court sees no reason to disagree with his selection. Robbins Geller Rudman & Dowd LLP is appointed lead counsel for the putative class in this consolidated action.

## IV. CASE SCHEDULE AND NEXT STEPS

As was ordered pursuant to stipulation, Dkt. No. 13, the parties are directed to meet and confer to set a schedule for lead plaintiff's filing of a consolidated complaint and for defendants' response to the complaint.  A proposed joint schedule is due by August 23, 2019.

For the consolidated complaint, pursuant to the PSLRA and the Federal Rules of Civil Procedure, and for the sake of clarity and efficient case management, lead plaintiff is directed to set out in chart form its securities fraud allegations under the following headings on a numbered, statement-by-statement basis:  (1) the speaker(s), date(s) and medium; (2) the false and misleading statements; (3) the reasons why the statements were false and misleading when made; and (4) the facts giving rise to a strong inference of scienter.  The chart may be attached to or contained in the consolidated complaint, but in any event will be deemed to be a part of the complaint.

**IT IS SO ORDERED.**

Dated:  August 9, 2019

JAMES DONATO
United States District Judge

5