UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STITCH FIX, INC. SECURITIES LITIGATION | Case No. 3:18-cv-06208-JD<br><br>**ORDER DISMISSING CASE**<br>Re: Dkt. No. 115 |

In this securities fraud class action, defendant Stitch Fix, Inc. challenges lead plaintiff's first amended consolidated complaint (FAC) for failure to state actionable claims. Dkt. No. 115. The Court dismissed the original complaint with leave to amend. Dkt. No. 109. The FAC did not remedy the shortcomings in the original, and so it is dismissed with prejudice. The case is ordered closed.

## DISCUSSION

### I.  LEGAL STANDARDS

Under well-established standards, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), including "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility analysis is "context-specific" and not only invites, but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These basic pleading obligations are supplemented by rules specific to securities fraud cases. The circumstances constituting the alleged fraud must be stated with particularity under

1   Federal Rule of Civil Procedure 9(b).  *See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d
2   598, 604 (9th Cir. 2014).  In addition, pursuant to the Private Securities Litigation Reform Act of
3   1995 (PSLRA), the complaint must "specify each statement alleged to have been misleading,
4   [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).  For each
5   alleged misstatement or omission, the complaint must also "state with particularity facts giving
6   rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-
7   4(b)(2)(A).

"To plead a claim under Section 10(b) and Rule 10b-5, [plaintiff] must allege:  (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Or. Pub. Emps. Ret. Fund.*, 774 F.3d at 603 (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).

## II.   FALSITY

Stitch Fix contests the adequacy of the falsity and scienter allegations.  The Court previously concluded that plaintiff had not plausibly alleged falsity with respect to Stitch Fix's statements about television advertising and active client growth.  *See* Dkt. No. 109 at 3.  For television advertising, plaintiff said that Stitch Fix had "temporarily ceased [its] national TV campaign for 10 weeks to measure the channel's efficacy." *Id.* at 5 (alteration in original).  In plaintiff's view, Stich Fix violated the securities laws because it failed to notify investors about this pause in national television advertisements.  *Id.*  The Court found that the challenged statements, which referred at best to television advertising generally, did not make any representations about whether national television advertisements were ongoing during the 10 weeks.  *Id.* at 5-6.  Moreover, because local television advertisements were still broadcast during the 10 weeks, the Court found that plaintiff failed to plead falsity.  *Id.* at 6-7.

Plaintiff's FAC challenges only three statements made by Stitch Fix on June 7 and June 8, 2018, which are all about television advertising:

- *We continue to make strategic and measured marketing investments designed to achieve near-term payback . . . .  Advertising expenses*

> *include the costs associated with* the production of advertising, *television*, radio, and online *advertising*.
>
> - Our second pillar for growth is in serving new clients.  We believe that we have significant opportunities to acquire new clients in our existing business.  The 30% year over year growth we've seen in active client count *is the result of these efforts, efficiently leveraging our* performance, *marketing capabilities and increasing our brand awareness.*
>
> - *We currently utilize both digital and offline channels to attract new visitors to our website or mobile app and subsequently convert them into clients.  Our current marketing efforts include* client referrals, affiliate programs, partnerships, display advertising, *television*, print, radio . . . . Starting in calendar year 2017, we began to increase our paid marketing expenses by investing more in digital marketing and launching our first television advertising campaigns.  *We expect to increase our spending on these and other paid marketing channels in the future . . . .*

Dkt. No. 112-1 (Ex. A to FAC) (emphasis in original).  The FAC dropped plaintiff's claims about active client growth.

Plaintiff's amended allegations about Stitch Fix's television advertising still fall short of the mark.  The statements targeted by the FAC are identical to the statements that plaintiff alleged in the original complaint.  *See* Dkt. No. 92-1 (Ex. A to Complaint).  They are inadequate for the same reason as before, namely that they are too general about ongoing efforts and future plans to be misleading with respect to the test that shut down national television advertisements for 10 weeks.  Dkt. No. 109 at 6.  The statements do not contain any misleading representations about the status of national television advertisements during that time.

Plaintiff's allegation that Stitch Fix was a national brand with national advertisements does not point to a different conclusion.  *See* Dkt. No. 112 ¶ 3 ("Defendants specifically represented Stitch Fix as a *national brand* whose *national image* and growth had been and would continue to be strengthened by television advertising." (emphasis in original)); *id*. ¶ 45 ("[B]road-based marketing efforts were necessary to grow its business, 'strengthen Stitch Fix *as a national consumer brand*,' acquire new clients and drive revenue growth." (emphasis in original)). Plaintiff suggests that, because Stitch Fix held itself out as a national brand, it was implied that the company's television advertising was national.  Dkt. No. 126 at 11.  This is not supported by the FAC, which makes no effort to tie a "national brand" to an expectation of "national advertisements."  Plaintiff says that national television advertising was essential to driving client

3

growth, but no representations to that effect were made to investors at the time of the allegedly misleading statements.  The allegations plaintiff features as ostensibly demonstrating that national advertising was essential to client growth are about the results of the 10-week test in October 2018; they do not demonstrate that investors in June 2018 would have understood the challenged statements to be about national advertising.  *See* Dkt. No. 126 at 11; Dkt. No. 112 ¶¶ 24, 28, 65-66, 76-80, 88, 91.  Plaintiff does not point to anything even hinting that investors had reason to believe that national television advertisements were essential to Stitch Fix's continued success in June 2018, or that reasonable investors had the expectation that all statements about television advertisements generally were necessarily about national advertisements.  A public statement is only "misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists."  *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (citing *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)) (quotations omitted).  The FAC did not plausibly allege that circumstance.

    Plaintiff's other theory, that Stitch Fix had a duty to disclose the incrementality test, is also unavailing.  Plaintiff says that Stitch Fix was required to disclose that national television advertisements had been stopped because Stitch Fix told investors about the importance of television advertising to the company's growth.  Dkt. No. 126 at 6-7; *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1009 (9th Cir. 2018) ("[O]nce defendants choose to tout positive information to the market, they are bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information.") (quoting *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705-06 (9th Cir. 2016)).  The statement that plaintiff identifies as "touting" Stitch Fix's television advertising, says that Stitch Fix would "continue to make strategic and measured marketing investments designed to achieve near-term payback," and identifies television advertising as one of several forms of advertising expenses for the company.  Dkt. No. 126 at 6; Dkt. No. 112 ¶¶ 21, 40.  While this touched upon television, it was clearly about advertising more generally, and to that point referenced several different advertising channels that Stitch Fix spent money on, in addition to television.  Dkt. No. 112 ¶ 21 (stating the defendants represented they "continue[d] to make strategic and measured marketing

4

investments," were "efficiently leveraging their marketing capabilities," and had "broad based current marketing advertisements" (internal quotations omitted)); *id*. ¶ 40 ("Advertising expenses include the costs associated with the production of advertising, television, radio and online advertising."). In effect, plaintiff misreads the statement as limited to television advertising at a national level. The broad nature of Stitch Fix's statement about its advertising strategy did not tout "the importance and current role of television advertising," as plaintiff contends, *see* Dkt. No. 126 at 6, and did not create a duty for Stitch Fix to tell investors about the incrementality test.[1]

### III.     SCIENTER AND 20(A) CLAIM

Because plaintiff has failed once again to sufficiently plead falsity as required by the PSLRA, the Court need not reach the issue of scienter for plaintiff's Section 10(b)/Rule 10b-5 claim. Further, because plaintiff has not adequately pled a violation of Section 10(b), plaintiff's Section 20(a) "control person liability" claim must also be dismissed. *See Or. Pub. Emps. Ret. Fund*, 774 F.3d at 610.

### IV.     LEAVE TO AMEND

Plaintiff has not requested a further opportunity to amend its complaint, *see* Dkt. No. 126, and the Court sees no good reason to grant it at this stage of the case. When, as here, "the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotations omitted). The fact that plaintiff failed to correct the deficiencies the Court previously pointed out "is a strong indication that the plaintiffs have no additional facts to plead." *Id*. Consequently, the Court will not grant plaintiff a further opportunity to amend.

---

[1] The FAC also includes new allegations based on reports from Former Employee No. 1. Dkt. No. 112 ¶¶ 4-6. These allegations do not change the Court's analysis of falsity, nor does plaintiff rely on these additional allegations to demonstrate the falsity of the alleged statements. Rather, plaintiff only relies on these allegations to argue materiality and scienter. *See* Dkt. No. 126 at 9, 13.

## CONCLUSION

Plaintiff's first amended consolidated complaint is dismissed with prejudice. Judgment will be entered and the case closed.

**IT IS SO ORDERED.**

Dated: September 30, 2021

JAMES DONATO
United States District Judge